228 So.2d 770

**Mittie O. CARTER**

**v.**

**Birthey T. BEASLEY.**

**6 Div. 660.**

Supreme Court of Alabama.

Nov. 26, 1969.

**10**

James K. Davis, Hamilton, for appellant.

Bill Fite, Hamilton, for appellee.

PER CURIAM:

This is a will contest. Following a jury verdict and judgment in favor of the will, the contestant appeals. The testator in this case, Ira Beasley, on July 1, 1966, executed a will prepared at his request by his attorney. He was married to Birthey T. Beasley who was named as the sole beneficiary and also appointed as executrix to serve without bond. There were no children. The couple married in 1929 and lived together until testator's death on September 2, 1968. Their only child, a son, died at age twenty-six.

Testator was committed to Bryce Hospital at Tuscaloosa on July 17, 1967. This was one year and seventeen days after he had made the will here contested. He remained in the hospital until his death.

A petition to probate the will was filed by the widow in the probate court, but transferred to the Circuit Court of Marion County after the contestant, Mittie O. Carter, a sister of testator, filed a contest alleging that said decedent was not of testamentary capacity on July 1, 1966, but was mentally incompetent to make and execute a will on said date. A trial by jury was demanded.

Following the jury verdict finding for the will, a motion for new trial was timely filed and overruled.

There are eight assignments of error. Assignment No. 5 is not argued. Assignments of error numbered 1, 2, 3, and 4 relate to questions and rulings of the court in the examination of the jury venire, followed by challenges to three individual jurors.

In the examination of the jury venire regarding their qualifications the following occurred:

"MR. VINSON: (Questioning prospective jurors as to qualifications) Is there any member of this jury panel that has heard this case discussed before today? Has anyone discussed it in your presence, any member of the jury? This question is to everybody and I will go down the list after I state the question once. Do you believe that a wife should inherit all the property of their husband in the event the husband dies before the wife does?

"MR. FITE: Object to that. That is improper.

"THE COURT: I think it is a proper inquiry. Overruled.

"MR. FITE: Except.

"THE COURT: You could ask it in a different manner, like, 'Are there any of you that do not feel—'. Go ahead. You have asked it.

"MR. VINSON: May I restate it since the interruption?

"THE COURT: It is all right with me.

"MR. VINSON: Do you believe that a wife should inherit all of the property of their husband in the event the husband died before the wife died? I will ask Mr. Adams first?

"MR. ADAMS: Where there are not kids?

"MR. FITE: See what we are getting into. We are getting off the issue.

"THE COURT: It goes to the feeling of the juror. I just say he may ask anything that goes to the feeling of the jurors.

"MR. FITE: We except.

"MR. VINSON: What is your answer to that (to prospective juror)?

"THE COURT: He asked whether there were any children.

"MR. VINSON: May I answer him?

"THE COURT: Certainly.

"MR. FITE: We object to this. This is highly improper.

"THE COURT: Overruled.

"MR. FITE: We except.

"THE COURT: He asked whether there were any children.

"MR. VINSON: Yes. Where there are no children?

"(Mr. Vinson thereupon asks each prospective juror on jury panel the question as heretofore framed.)

"MR. VINSON: May I address another question?

"THE COURT: All right.

"MR. VINSON: Listen carefully to the question, please. This is to the whole jury panel: Would you hesitate to find a Will invalid if you were reasonably satisfied from the evidence that the person making the Will was menatally incapacited at the time the Will was made?

"MR. FITE: We object to that as incompetent, irrelevant, and immaterial. It's improper, and invades the province of the jury.

"THE COURT: Sustained the way it was framed, but overruled as to—

"MR. VINSON: I am going to rephrase the question. Are there any of you that would not hesitate to declare a will invalid if at the time the Will was made you are reasonably satisfied from the evidence that the person making the Will was mentally incapacitated at the time, if the Will gave the wife all of the husband's property?

"MR. FITE: I object to that. That is a double question.

"THE COURT: Sustained. Do you want to ask them the first part? All right, you may both have an exception.

(To jury panel): Ladies and gentlemen of the jury, I will phrase it this way: Are there any of you that would hesitate to declare a will invalid if you were reasonably satisfied from the evidence in the case that the person so making the Will, and we will in this case call it the intestator (sic), was mentally incapacitated to make a Will at the time of the making? Are there any of you who would hesitate to declare a Will invalid if you were reasonably satisfied from the evidence that the person so making it was not mentally capable of making it when he did? If there is any that say they would hesitate they can signify by holding up their hand, and no-one holds up their hand. Is that the belief of the jury panel?

"MR. FITE: We object to that. What does he mean by—

"THE COURT: Just what I asked them. I will put it this way and will apologize to counsel on both sides: Is any member of this jury panel, regardless of your belief or feelings as to what should be, is there any member of this panel that —and I state again, regardless of your feeling about the way it ought to be? Is there anyone of you that feels that what the law should be should control over what the law is that is stated to you in the drawing of a Will. In other words, are there any of you that would interpose your feelings as to what should be or ought to be over what the law is in regard to Wills or in regard to descent and distribution or inheritance of property, or any of the other rights of property? Do you feel that your feelings or your opinion should be paramount to the law?

"(Response by jury panel negative.)

"MR. VINSON: Would any member of this jury panel render a verdict declaring a Will invalid if the Will was from a husband to a wife, irrespective of the mental condition of the husband at the time of the making of the Will? May I poll the jury as to that (to Court)?

"MR. FITE: We object to it.

"MR. VINSON: I move that I be permitted to ask that question individually.

"THE COURT: The motion is denied as to the general question. If you want to question each member of the jury panel individually and pose the question to him or her at the time you may. It is granted.

"MR. FITE: We object to it. It has already been asked the jury. I think they heard it?

"THE COURT: (To juror) Did you understand that question, Mr. Adams?

"MR. ADAMS: I think so.

"THE COURT: Overruled. The way I understand it, is Would you declare a Will invalid because it was from—

"MR. VINSON: That might be the way it is stated. May I withdraw that question.

"THE COURT: You say, 'Irrespective of his mental capacity'. In other words, if he is of sound mind—

"MR. VINSON: Could you render a verdict holding a Will invalid—By invalid, I mean holding that it was no good—That the Will was no good, if the Will was from a husband to a wife, irrespective of the mental condition of the husband at the time of the making of the Will?

"MR. FITE: We object to that as vague and uncertain.

"THE COURT: Sustained; on the grounds it has already been asked and answered.

"MR. VINSON: We except.

"JUROR: I think the wife ought to have it if she works as hard as he did for it.

"MR. VINSON: *If a Will were from a husband to a wife would you hold that to be a good and valid Will under all circumstances where there were no children living from those parties or no grandchildren from those parties?*

"MR. FITE: Object to that—

"THE COURT: Sustained.

"MR. VINSON: We except. Mr. Adams, you gave an answer to the first question that the wife should receive the property of the husband if there were no children, with your opinion and thought about that matter as you have stated it, could you, whatever the evidence might be, render a verdict that would be different from that opinion?

"MR. FITE: We object to that. It's not clear what the question is.

"THE COURT: Overruled.

"MR. ADAMS: I think Will or no Will she ought to have it. She worked as hard as he did.

"MR. VINSON: I move to challenge Mr. Adams on bias.

"THE COURT: Motion is denied.

"MR. VINSON: We except.

"THE COURT: He felt like she should have it.

"MR. VINSON: Mr. Armstrong?

"MR. FITE: Objection.

"THE COURT: Sustained.

"MR. VINSON: We except. Mr. Armstrong, if you were satisfied from the evidence that the beneficiary, the wife, should receive a lesser amount if the Will were held invalid, would your feelings as you gave to my question a while ago influence your verdict?

"MR. FITE: We object to that.

"THE COURT: Sustained.

"MR. VINSON: Mr. Armstrong, if evidence were presented that reasonably satisfied you that the husband didn't have sufficient mental capacity to make a Will at the time he made it, and there were no children of the husband and wife, would you find that the Will was valid?

"MR. FITE: Object to that. That is a confusing question.

"THE COURT: Overruled. Go ahead. Are you putting it to him, no matter what the mental condition of the husband was would he hold the will good, if the will were to the wife, if there were no children?

"MR. ARMSTRONG: I think that would be about the same as the first question. I think the wife should have it.

"MR. VINSON: Mr. Berry, to the same question?

"MR. BERRY: Well, I would say for that to go along with the answer to the first question.

"MR. VINSON: Mrs. John Rye?

"MRS. RYE: I would have to hear both parties before I would know very much about that.

"MR. VINSON: Let me address the jury panel like this: I'm not trying to pry into your personal matters, and I'm not trying to pry into how you would do or what you would do, but knowing the facts that I expect to come from this stand I feel that I should be entitled to the benefit of what you think about this matter, where there is a Will from a husband to a wife and there are no children. I don't want to incur your ill will or—

"MR. FITE: I object to this.

"THE COURT: Overruled.

"MR. VINSON: Mr. Burleson, can you answer my question?

"MR. BURLESON: I don't think any two cases would be the same.

"MR. VINSON: Mrs. Childers, do you think that if the Will is from the husband to the wife and there are no children that the Will should be held good, irrespective of the mental capacity of the husband who made the will?

"MR. FITE: We object to that. That's not treating the jury right, to ask them about these terms, terms that the average laymen aren't familiar with.

"THE COURT: Again I state, that question is addressed to all of you. (Off record.) Mrs. Childers, do you think a Will ought to be good, irrespective of the mental capacity of the intestate?

"MRS. CHILDERS: Honestly, I guess I would have to say 'Yes' if he has got the knowledge to make a Will and sign it.

"THE COURT: Are you saying, if he knows what he is doing?

"MRS. CHILDERS: Yes.

"THE COURT: Well, I will put a question from the bench to you. Do you think that a wife's will to the husband should be good, even though she didn't know what she was doing? You can think of hundreds of hypothetical questions. Let's say one or the other gets the other one drunk to where they didn't know what they were signing, and the other sticks a paper out in front of him or her to sign, or that he dope her up to where she is highly doped and sticks a piece of paper in front of her to sign, and says sign it—Do you think the Will should be good, just because it is from the wife to the husband?

"MRS. CHILDERS: Not if she doesn't know what she is doing.

"THE COURT: I don't mean to argue with you all or with any of you, but counsel has asked the question, 'Do you think that a Will from a husband to the wife should be good, regardless of whether he is sane or insane—'

"MR. VINSON: Provided there are no children?

"THE COURT: No 'Provided' about it. It makes no difference whether there are 50 children or no children, it would be whether he is insane or not, just because it is to his wife—

"MR. VINSON: My question is predicated on there be no children—My question is, if there are no children.

"THE COURT: Mrs. Childers answers she thinks he ought to know what he is doing.

"MR. VINSON: If the couple had no children would you require a greater weight of evidence to be had in the case to declare a Will invalid than you would if there were children?

"(No response from jury panel.)

"* * *

"MR. VINSON: I move that the Court permit Mittie Carter to challenge all the jurors that answered that they believed that the wife should inherit all the property of the husband in the event that the husband died before the wife died.

"THE COURT: I deny that motion.

"MR. VINSON: From which ruling of the Court the Contestant duly excepts. And the Contestant, Mittie Carter, respectfully requests the Court to challenge Mr. John Thomas Adams for his qualified answer to question number 2 propounded to him by this Court.

"THE COURT: Denied.

"MR. VINSON: And to Mr. Armstrong, the same; and to Mr. Berry, the same; and to Mrs. Quillie Mae Childers, the same.

"THE COURT: Denied.

"MR. VINSON: To which ruling the Contestant duly excepts.

"Jury was thereupon selected and sworn." (Emphasis Supplied)

Assignment of Error No. 1 is the ruling of the court in sustaining the objection to the question propounded to John Thomas Adams as follows:

"MR. VINSON: If a Will were from a husband to a wife would you hold that to be a good and valid Will under all circumstances where there were no children living from those parties or no grandchildren from those parties?

It should be noted that earlier the said prospective juror had already answered one question of a similar nature. The an-

swer was qualified as the question "of children or no children" was brought up. The question was restated and the court allowed the answer. Most of these questions were difficult to understand but all were certainly subject to the exercise of the discretion of the court as provided by statute. 1958 Recompiled Code of Alabama, Title 30, § 52, as last amended.

This one question should not be taken and considered out of context. The court posed two questions to the jury venire, supra, seeking to ascertain if any of the panel had any fixed opinion.

■ We hold there was no abuse of discretion in the ruling of the court in sustaining the objection to the question propounded.

*Assignments of Error 2, 3, and 4.*

■ These assignments charge error and abuse of discretion by the trial court in denying challenges to members of the jury venire, namely John Thomas Adams, Mr. Armstrong, and Mr. Berry, on the grounds that they were biased. The assignments are related and may be considered together. All of this goes back to the colloquy in the questions put to the venire, supra. We observe that the questions to jurors Adams and Armstrong, immediately preceding the challenges, followed the attempt by the court to ascertain if any member of the venire was prejudiced, or otherwise disqualified. No juror responded to this inquiry. Thereafter juror Adams, replying to a question from appellant's counsel, said: "I think Will or no Will she ought to have it." This clearly indicated, in our judgment, a closed mind on the issues necessarily embraced in the case and rendered the juror subject to challenge.

The reply from juror Armstrong was candid, clear, and emphatic. Even, if reasonably satisfied from the evidence that testator lacked the mental capacity to make a will, he felt the wife should inherit his

property. This juror could not possibly sit and do justice to the contestant with his mind fully made up in favor of the wife.

■ We hold that juror Armstrong, along with juror Adams, was biased and subject to the challenges presented. Failure of the court to sustain the challenges requires a reversal of this cause.

"When a struck jury is demanded, both sides are entitled to a list containing 24 fair and impartial jurors and should not be subjected to the peril of having a juror put upon them who is disqualified to sit as a juror in the case. * * * 'The law, common and statutory, is careful to exclude from the jury box a juror who has, in any degree, prejudged the issue he is to try; * * *' * * *." Morris v. McClellan, 169 Ala. 90, 97, 53 So. 155, 156; Southern R. Co. v. Milan, 240 Ala. 333, 199 So. 711.

The same principle would be applicable in cases where a struck jury was not demanded. Louisville & Nashville R. Co. v. Young, 168 Ala. 551, 53 So. 213.

■ Nor is it necessary for appellant to show that she was prejudiced by the trial court's ruling. Prejudicial injury results from such failure to exclude a disqualified juror, because, in effect, it gives one party more strikes than another. Albright & Wood, Inc. v. Wallace, 274 Ala. 317, 148 So.2d 240; Birmingham Baptist Hospital v. Orange, 284 Ala. 160, 223 So.2d 279.

Because of our holding that this case must be remanded for a new trial, we forego consideration of other questions presented on this appeal.

This opinion was prepared by J. Edgar Bowron, Supernumerary Circuit Judge, and adopted by the Court as its opinion.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON, COLEMAN, BLOODWORTH, and McCALL, JJ., concur.